**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DENNIS G. WILLIAMS,

           Plaintiff,

vs.                                        Case No.  3:08-cv-357-J-34JRK

NATIONAL NOTARY ASSOCIATION-
FLORIDA and DONNA FORBES,
NOTARY PUBLIC,

           Defendants.
_____/

**REPORT AND RECOMMENDATION**[1]

This cause is before the Court pursuant to 28 U.S.C. § 1915(e)(2) on Plaintiff's Complaint (Doc. No. 1; "Complaint"), filed April 9, 2008; Plaintiff's Motion to Proceed In Forma Pauperis and Declaration in Support (Doc. No. 2; "IFP Motion"), filed April 9, 2008; Plaintiff's Affidavit of Indigency (Doc. No. 6), filed June 4, 2008; and Plaintiff's Amended Complaint (Doc. No. 8; "Amended Complaint"), filed August 1, 2008.  Plaintiff alleges that Defendant Donna Forbes ("Defendant Forbes"), a notary public who is bonded by Defendant National Notary Association-Florida ("Defendant NNA-FL"), participated in a fraudulent scheme to deprive Plaintiff of real property that he was entitled to inherit from his late mother. See Complaint.  The issues are whether Plaintiff states a viable claim under § 1983

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual allegations on appeal.

when the State provides tort remedies to redress a random, unauthorized deprivation of a constitutionally-protected property interest, and whether a notary public is a state actor. The undersigned concludes that the availability of tort remedies in the State courts provide constitutionally adequate process, and that a notary public is not a state actor. Therefore, Plaintiff has not stated a claim on which relief may be granted, and the undersigned recommends that the IFP Motion be denied and this case be dismissed.

## I.    Background / Procedural History

On April 9, 2008, Plaintiff, a prisoner, filed a Complaint grounded on 42 U.S.C. § 1983 (Doc. No. 1). The Complaint alleges that Defendant Forbes engaged in misconduct by notarizing two forged quitclaim deeds, which wrongfully enabled Shawntrice L. Taylor to gain possession of real property that belonged to Plaintiff's late mother and was left to Plaintiff as his mother's sole heir. See id. While Plaintiff was incarcerated, his mother, Annice Gray Williams, passed away on November 29, 2006. Id. at 4. On December 7, 2006, two quitclaim deeds were filed in state court, transferring ownership of two properties from Plaintiff's mother to Shawntrice L. Taylor. Id. at 5. Both deeds appear to be signed by Plaintiff's mother on August 2, 2004, and acknowledged by Defendant Forbes in her capacity as a notary public on that same date. Id. Plaintiff alleges that "Defendant Forbes is in fact independently employed and self employed as an independent contractor of an entity of the Executive Branch of state government," Amended Complaint at 5, and that Defendant Forbes is bonded through Defendant National Notary Association-Florida, Complaint at 4.

In August 2007, Plaintiff was informed that the deeds may have been forged. After inspecting the relevant documents personally, he came to believe that the deeds were forged

and falsely acknowledged by the notary public. Id. at 6. Plaintiff made three observations leading to this conclusion. First, the stamp on the deeds shows that the notary public's commission expires on May 15, 2009. Id. According to Plaintiff's allegation, notaries public are appointed for four-year terms, and Plaintiff's research indicates that the stamp used on the deeds was issued on May 15, 2005. Id. Therefore, according to Plaintiff, the deeds could not have been notarized using that stamp on August 2, 2004. Id. Second, Plaintiff notes that the signatures on the deeds do not seem to match his mother's signature on her last will and testament. Id. at 6-7. Plaintiff suspects they were copied from her driver's license, as the two signatures apparently line up perfectly on top of one another. Id. Third, Plaintiff points out that both deeds contain a note indicating that the documents were prepared by "Shawntrice Travis."[2] Id. at 6-8. Plaintiff explains that Shawntrice Travis married Anthony Travis after August 2, 2004, and therefore she would not have used her married name at the time the documents were purportedly prepared; she would have used the name "Shawntrice Taylor" instead. Id.

On October 15, 2007, Plaintiff filed a suit in state court "dealing with the same facts involved in this action." Id. at 2-3. The defendants in the state-court case are Shawntrice Taylor-Travis, Judieth Eldridge, and Defendants Forbes and NNA-FL. Id. at 2. Plaintiff states that he has also contacted the Governor's office and filed a complaint against Defendant Forbes. Id. at 9. The Governor's office responded that the notary commission

---

[2] According to Plaintiff's Complaint, "Shawntrice Taylor" was the name given as the recipient of the property on both deeds, while "Shawntrice Travis" was the name given for the person who prepared the deeds. Compl. at 7-8.

of Defendant Forbes will remain on hold pending the outcome of the state-court proceedings. Id. On October 30, 2007, a will was admitted to probate which names Plaintiff as the sole heir of the estate of Annice Gray Williams. Id.

After screening the Complaint pursuant to 28 U.S.C. § 1915, the Court identified several deficiencies in an Order entered July 17, 2008. (Doc. No. 7; "Order"). The Court explained that Plaintiff did not have a viable cause of action under 42 U.S.C. § 1983 because the alleged deprivation did not appear to involve state action, and there were state-court proceedings underway to remedy the deprivation. See Order at 5, 7. Accordingly, the IFP Motion was taken under advisement and Plaintiff was given an opportunity to amend the Complaint. See Order. Plaintiff's Amended Complaint does not allege additional facts or address the concern that the pending post-deprivation proceedings in the State court provide Plaintiff with a constitutionally adequate remedy. See Amended Complaint. Rather, the Amended Complaint addresses only whether a notary public is a state actor. See id.

## II.   Standard of Review

A plaintiff may be allowed to commence a civil action in forma pauperis, i.e., without payment of court filing fees, when that plaintiff declares in an affidavit to the court that he or she "is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). A court receiving such a case, however, must dismiss sua sponte if, at any time, it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). With respect to failing to state a claim on which relief may be granted, the language of § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil

Procedure ("Rule") 12(b)(6), so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). A properly stated claim "may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007) (citing Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994)). Pleadings submitted by a pro se plaintiff "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Nevertheless, a court is under no duty to "re-write" a plaintiff's complaint to find a claim. Peterson v. Atlanta Housing Authority, 998 F.2d 904, 912 (11th Cir. 1993).

**III.   Discussion**

Although Plaintiff's Affidavit demonstrates his inability to pay the filing fee, Plaintiff should not be permitted to proceed in forma pauperis because he has failed to state a claim under § 1983. To state claim under § 1983 alleging a denial of procedural due process, Plaintiff must allege (1) a deprivation of a constitutionally-protected property interest; (2) state action; and (3) constitutionally-inadequate process. Mickens v. Tenth Judicial Circuit, 181 F.App'x 865, 877 (11th Cir. 2006); Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).

As the Court explained in the Order entered July 17, 2008 (Doc. No. 7), the proper procedures for remedying the alleged deprivation of Plaintiff's constitutionally-protected property interest are already underway. Order at 7. "[T]he state must have the opportunity to 'remedy the failings of its procedural subdivisions and agencies in the appropriate

fora–agencies, review boards, and state courts' before being subject to a claim alleging a procedural due process violation." Id. (quoting Mickens v. Tenth Judicial Circuit, 181 F.App'x 865, 877 (11th Cir. 2006); Horton v. Bd. of County Comm'rs of Flagler County, 202 F.3d 1297, 1300 (11th Cir. 2000) (stating that "the rule looks to the existence of an opportunity–to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered.  If state courts would, then there is no federal due process violation . . . .")).

The origins of Mickens and Horton can be traced back to Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)), and Hudson v. Palmer, 468 U.S. 517 (1984).  "Under the Parratt-Hudson doctrine, a random and unauthorized deprivation does not violate procedural due process if the state provides an adequate post-deprivation remedy." Carcamo v. Miami-Dade County, 375 F.3d 1104, 1105 (11th Cir. 2004) (citing Zinermon v. Burch, 494 U.S. 113, 132 (1990)).  When a deprivation is the result of a random, unauthorized act rather than the result of an established state policy or procedure, it is impossible to predict when or if such deprivation will occur. Parrat, 451 U.S. at 541-43; Hudson, 468 U.S. at 531-33.  The facts alleged by Plaintiff in no way suggest that the actions of Defendant Forbes were taken pursuant to policies or procedures established by the State.  Therefore, the State could not have predicted when or if the fraudulent acts would occur, and a hearing before the deprivation allegedly took place would have been impractical if not impossible.  State-court proceedings initiated by Plaintiff are currently pending which will make Plaintiff whole if he is successful. The State's tort remedies provide redress for the random, unauthorized deprivation of the

constitutionally-protected property interest alleged by Plaintiff.  See Powell v. Ga. Dep't. of Human Res., 114 F.3d 1074, 1081-82 (11th Cir. 1997); Tinney v. Shores, 77 F.3d 378, 381-82 (11th Cir. 1996).  As Plaintiff is currently litigating this matter in the State courts–the proper forum–the State is providing an adequate post-deprivation remedy, and Plaintiff is receiving all of the process he is due.  See Zinermon, 494 U.S. at 141.

Even if the remedial process provided by the State were constitutionally inadequate, Plaintiff's complaint still fails to state a claim because the facts alleged do not amount to state action.  The United States Supreme Court has "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  A deprivation is fairly attributed to the State when it is caused by the exercise of some right created by the state and the party charged with the deprivation "may fairly be said to be a state actor."  Id.  The question, then, is whether a Florida notary public is a state actor for purposes of the Fourteenth Amendment.

The Florida Statutes related to notaries public indicate that a notary public is neither a public official nor a state actor.  Although there is a passing reference to the "office of notary public," Fla. Stat. § 117.01, the statute more frequently refers to the notary public appointment as a commission.  See Fla. Stat. § 117.01, et seq.  The statutory powers and duties given to notaries public are merely ministerial: the power to administer oaths, Fla. Stat. § 117.03; the power to take the acknowledgments of deeds and other written instruments, Fla. Stat. § 117.04; and the power to solemnize the rites of matrimony, Fla. Stat. § 117.045; see also Fla. Stat. § 117.05 (prescribing the requirements for notarizing documents).  These ministerial powers and duties give a notary public no discretion to make

decisions on behalf of the government; the decisions and actions of a notary public are not imbued with the imprimatur of the State, as are those of public officials.

In addition, the Statute recognizes the widely-known fact that notaries public are often employed by private entities. See Fla. Stat. § 117.05(3)(c) (providing that the "seal and certificate of commission must not be surrendered to an employer upon termination of employment, regardless of whether the employer paid for the seal or for the commission") (emphasis added). The employer-employee relationship inherently involves control, which the statute itself seems to assume. See Fla. Stat. § 117.05(6) (providing that the "employer of a notary public shall be liable to the persons involved for all damages proximately caused by the notary's official misconduct, if the notary was acting within the scope of his or her employment at the time the notary engaged in the official misconduct") (emphasis added). The employment and control of many notaries public by nongovernmental entities strongly suggest that a notary public is not a public official, as public officials are typically employed by the State in an official capacity.

The Florida Supreme Court has recognized that notaries public are not decisionmakers for the State and do not take action for the State. See Graham v. Ramani, 383 So. 2d 634, 638 (Fla. 1980) (holding that a citizenship requirement for notaries public violates the Equal Protection Clause). Analyzing the nature of a notary public commission, albeit in a different context, the Supreme Court of Florida explained that a notary public's duties do not involve governing and are not intertwined with the State's governing function, stating that "[n]one of [a notary public's] duties entail formulating, executing, or reviewing public policy, or other functions that go to the heart of representative government." Id.

-8-

Although a Florida notary public is not a public official solely by virtue of the notary public commission, it is still appropriate to consider whether Defendant Forbes, as a private individual, or Defendant NNA-FL, as a private entity, could nonetheless be state actors. At least three tests have developed to determine whether a private person or entity should be considered a state actor: the public function test; the state compulsion test; and the nexus/joint action test.[3] Langston By and Through Langston v. ACT, 890 F.2d 380, 384 (11th Cir. 1989); see Lugar, 457 U.S. at 938-39.

"The public function test is narrow, covering private actors who perform functions that are traditionally the exclusive prerogative of the state." Langston, 890 F.2d at 384 (emphasis in original). Notaries public have the power to administer oaths, acknowledge written instruments, and solemnize the rites of matrimony. Traditionally, these are not functions performed exclusively by the government, and therefore Defendant Forbes is not a state actor under the public function test. Defendant NNA-FL is not a state actor under the public function test because bonding notaries public is not traditionally a governmental function, much less exclusively so.

The state compulsion test "asks whether the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the private actor's choice must be deemed to be that of the state." Id. at 385. The Complaint and Amended Complaint do not suggest that the State coerced or significantly encouraged Defendant

---

[3] The Supreme Court has expressed some doubt about whether "these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court." Lugar, 457 U.S. at 939.

Forbes's choice to engage in the alleged fraudulent conduct, and therefore she is not a state actor under the state compulsion test. Nor is there any suggestion that the State coerced or significantly encouraged Defendant NNA-FL to bond Defendant Forbes.

Under the nexus/joint action test, a court must determine whether the state has "intertwined itself with the private actor to such an extent that the state was a joint participant." Id. at 385. It cannot be said that notaries public are intertwined with the State in such a way that they act jointly with it. The State simply licenses and regulates notaries public in a manner similar to the licensing and regulation of many other occupations, including almost everything from accountants (see Fla. Stat. § 473.308, et seq.) to exterminators (see Fla. Stat. § 482.071, et seq.). The mere fact that the State licenses and regulates these occupations does not make them state actors. See Jackson v. Metro Edison Co., 419 U.S. 345, 350-54 (1974). The facts alleged in the Complaint and Amended Complaint do not suggest that the State acted jointly with either Defendant Forbes or Defendant NNA-FL.

Furthermore, a notary public is fundamentally different from other individuals whom courts have found to be state actors in the past: governors,[4] state attorneys general,[5] police officers,[6] and physicians for state prisoners.[7] These individuals take action or make decisions on behalf of the government, often with a degree of autonomy or independence. They act on behalf of the State and bind the State in a way that a notary public does not.

---

[4] See A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc., 263 F.3d 239, 260 (3d Cir. 2001).
[5] Id.
[6] See Romanski v. Detroit Entm't, L.L.C., 428 F.3d 629, 637 (6th Cir. 2005).
[7] See West v. Atkins, 487 U.S. 42, 54-58 (1988).

In contrast, a notary public is more like those individuals whom courts have found not to be state actors: court-appointed defense attorneys,[8] bondsmen,[9] and members of a "first aid squad."[10]  While performing functions that have some connection to activities in which the State is involved, these individuals do not act for the state, and their actions are not fairly attributable to the State.

At least two other federal courts interpreting Florida law take the view that a notary public is not a state actor.  See Stephens v. Johnson, No. 8:07-cv-1668-T27MAP, 2007 WL 2819648 at *1 (M.D. Fla. Sept. 25, 2007); Spells v. Mitchell, No. 08-60453-CIV, 2008 WL 1925260 (S.D. Fla. April 30, 2008).  In Stephens, a pro se plaintiff filed a claim against a notary, along with an attorney and several family members, under 42 U.S.C. § 1983. Stephens, 2007 WL 2819648 at *1.  Explicitly determining that the defendants, including the notary, were not state actors, the court dismissed the case. Id.; see also Spells, 2008 WL 1925260.  The decisions of these courts are consistent with conclusion of the undersigned.[11]

## IV.    Conclusion

The Court already has given Plaintiff the opportunity to amend his original Complaint. As the Amended Complaint does not allege constitutionally-inadequate process or state

---

[8] See Polk County v. Dodson, 454 U.S. 312, 324-25 (1981).
[9] See Weaver v. James Bonding, Co., Inc., 442 F.Supp.2d 1219, 1226 (S.D. Ala. 2006).
[10] See Groman v. Township of Manalapan, 47 F.3d 628, 642 (3d Cir. 1995).
[11] At least one federal court has determined that the result would be the same under New Jersey law. See Muniz v. Spevack, No. Civ. 05-2370(JAG), 2006 WL 208571, at *3 (D.N.J. Jan. 25, 2006). However, under Pennsylvania law or Tennessee law the result may be different.  See Kaufman v. McCrory Stores Div. of McCrory Corp., 613 F. Supp. 1179, 1182 (M.D. Pa. 1985); Browne v. Sabatina, Civ. A. No. 89-1228, 1990 WL 191973 at *1 (E.D. Pa. Nov. 29, 1990); Krueger v. Miller, 489 F. Supp. 321, 328-29 (E.D. Tenn. 1977).

action, he has failed to state a claim for a denial of procedural due process under 42 U.S.C. § 1983.  See 28 U.S.C. § 1915(e)(2)(B)(ii).  Accordingly, it is

**RECOMMENDED**:

1. Plaintiff's Motion for Leave to Proceed In Forma Pauperis / Affidavit of Indigency (Doc. No. 2; Doc. No. 6) be **DENIED**.

2. Plaintiff's Amended Complaint (Doc. No. 8) be **DISMISSED for failure to state a claim on which relief may be granted.**

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on November 4, 2008.

*/s/ James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jdf
Copies to:
Pro Se parties